UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ALBERT MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 22-164-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF HARRODSBURG, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Albert Moore has moved for summary judgment on the single count in his Complaint against Defendant City of Harrodsburg (Harrodsburg) for alleged violation of the First Amendment to the United States Constitution.   [Record No. 28] He argues that Harrodsburg unconstitutionally discriminated against the content or viewpoint of his speech. [Record No. 28]  Harrodsburg counters that Moore did not have a constitutionally-protected right to speak about his employment termination during a public meeting.  [Record No. 35] The plaintiff's motion will be granted because Moore's speech is protected under the First Amendment and Harrodsburg's actions constitute impermissible content and viewpoint discrimination.[1]

## I. Background

Moore was the director of public works for Harrodsburg until his termination in June 2021.  [Record No. 28]  Harrodsburg provided him with an opportunity to appeal his dismissal,

---

[1]        Oral argument regarding the merits of this motion is unnecessary.

but Moore declined.  [Record No. 35]  Approximately one year passed before Moore sought to speak to Harrodsburg commissioners at a public meeting.  [Record Nos. 28, 35]

Until mid-June 2022, Harrodsburg's Board of Commissioners' meetings included a segment entitled "Welcome Guests" which allowed open public comment on any topic. [Record Nos. 28, 35]  A member of the public—even a non-resident—who desired to speak had the option to call the city clerk and indicate "that [he or she] wanted to be placed on the agenda to speak about a particular topic, and [the clerk] would put [the caller] on the agenda." [Record No. 28-1, p. 24]  An individual could speak during the city meetings about "the same thing . . . month after month," regardless of substance, and without a time limit.  [Record No. 28-3 pp. 27, 32, 37; Record No. 28-1 pp. 25, 29, 33-34; Record No. 28-2 pp. 54, 70] The parties agree that it was the "wild west of public participation," regarding the lack of speaker restrictions.  [Record No. 35, p. 21]

Moore called the Harrodsburg clerk on June 3, 2022, requesting to speak during the "Welcome Guests" portion of the June 13, 2022, public meeting.  [Record No. 35, p. 3] He allegedly indicated that he wished to discuss his employment termination with "Larry, Curly, and Moe," referring to Harrodsburg Commissioners Whitenack, Isham, and Johnson.  [Record No. 35, p. 3]  The clerk was "concerned that if [Moore] had come to the meeting, it was going to be disruptive," because of their phone interaction, and the clerk's knowledge of Moore's allegedly sordid past.  [Record No. 28-1, pp. 29-32]  She "thought it was going to be confrontational," and "did not think it was going to be a civil conversation to have."  [*Id.*]  Due to these "red flags," the clerk contacted the Harrodsburg City Attorney, who later spoke to Moore about his inquiry.  [Record No. 28-1, p. 28]  The City Attorney denied Moore's request to speak, stating "that the time and place for [him] to dispute [his termination] . . . has passed."

[Record No. 35, p. 4]  The Clerk—as the decisionmaker—had never denied an individual's request to speak.

The Mayor, City Clerk, and City Attorney attended a training seminar on June 15, 2022, presented by the Kentucky League of Cities, when they "learned that [they] do not have to have the public speak at [city] meetings." [Record No. 35, p. 15]  Harrodsburg then allegedly removed the "Welcome Guests," portion for all future meetings.  [Record No. 35, pp. 16-19]  Moore subsequently called the city clerk, submitting a second request to speak during a Harrodsburg city meeting, which was denied.  [*Id.*] Moore filed suit on June 23, 2022, pursuant to 42 U.S.C. § 1983 for alleged violations of the First Amendment. [Record No. 1]  He contends that Harrodsburg unconstitutionally censored his critical viewpoints.  [Record No. 28]  Harrodsburg counters that prohibiting speech regarding Moore's employment was a constitutionally permissible time, place, and manner restriction.  [Record No. 35]

## II.  Standard of Review

Summary judgment is appropriate when the moving party demonstrates that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party has satisfied this burden, the burden shifts to the nonmovant. The nonmoving party may not simply rely on its pleadings but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  In other words, the nonmoving party must present "significant probative evidence that establishes more than some metaphysical doubt as to the material facts." *Golden v. Mirabile Invest. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (citation and alteration omitted).

The Court affords all reasonable inferences and construes the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, a dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. Next, the Court may not weigh the evidence or make credibility determinations but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). *See also Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The existence of a scintilla of evidence favoring the nonmovant is not sufficient to avoid summary judgment. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (citing *Anderson*, 477 U.S. at 252).

## III. Discussion

Moore argues that Harrodsburg Commissioners' meetings are "a mix between 'designated' and 'limited public' forums," and the city "censored the viewpoints of a critic with an unsupportable prior restraint," when it denied his request to speak.[2]  [Record No. 28] But Harrodsburg argues that even if its meetings were designated or limited public forums until mid-June 2022, Moore's speech was unprotected and prohibiting speech regarding employment is a reasonable time, place, and manner restriction.  [Record No. 35]

---

[2]      "[T]he Supreme Court has made clear that speech regulations fit into one of two categories: prior restraints and subsequent punishments. . . .  A prior restraint is . . . a regulatory mechanism . . . used to deny a speaker permission to speak before the speech occurs." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1226 n.11 (11th Cir. 2017) (discussing prior restraint and the unbridled-discretion doctrine as it applies to limited public forums).

"A First Amendment claim depends on three inquiries: (1) whether speech is protected; (2) 'the nature of the forum' in which the speech occurs; and (3) whether the government's restriction on speech satisfies the relevant forum's associated constitutional standard." *Hartman v. Thompson*, 931 F.3d 471, 478 (6th Cir. 2019); *see also Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 242 (6th Cir. 2015) (explaining that courts "first, . . . determine whether the speech at issue is afforded constitutional protection; second, . . . examine the nature of the forum where the speech was made; and third, . . . assess whether the government's action in shutting off the speech was legitimate").

## A. Protected Speech

Harrodsburg contends that Moore's proposed speech is not constitutionally protected. [Record No. 35] Specifically, it asserts states that "there exists no such right under the First Amendment" for a former city employee "to discuss . . . termination of his employment at a regularly scheduled meeting of the elected governing body that terminated his employment one (1) year prior." [Record No. 35] But Moore's procedural due process right is distinct from his right to free speech under the First Amendment. "The Supreme Court has repeatedly reminded us that almost all speech is protected other than 'in a few limited areas[]' . . . [including] speech expressed as part of a crime, obscene expression, incitement, and fraud." *Novak v. City of Parma*, 932 F.3d 421, 427 (6th Cir. 2019) (first quoting *United States v. Stevens*, 559 U.S. 460, 468 (2010) (internal quotation marks omitted); and then citing *United States v. Alvarez*, 567 U.S. 709, 717, 720 (2012)). Here, there is no indication that Moore's purported comments involved one of the few limited unprotected areas under the First Amendment to the United States Constitution.

- 5 -

Harrodsburg also appears to argue that Moore's speech is unprotected because the government is not required to indefinitely retain the open character of a forum, and "a meeting of a governmental body need not be open to the public for discussion at all."  [Record No. 35] But this contention is inapplicable regarding Moore's first request to speak, which occurred before the city allegedly omitted public comment from its meetings.  Its agenda contained the "Welcome Guests" portion at that time, and "[w]hen the government intentionally opens a forum for expressive activity, as it has here, the government 'must respect the lawful boundaries it has itself set.'"  *East Timor Action Network, Inc. v. City of New York*, 71 F. Supp. 2d 334, 345 (S.D.N.Y. 1999) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).  Moore's speech is afforded constitutional protection.

## B.  Nature of the Forum

"[T]he level of justification required for a speech restriction[] varies depending on the forum where the speech occurs."  *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (citing *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010)).  "For the purposes of forum analysis, four forum classifications have been recognized: public forums, designated public forums, limited public forums, and non-public forums."  *Agema v. City of Allegan*, 826 F.3d 326, 335 (6th Cir. 2016) (citing *Miller v. City of Cincinnati*, 622 F.3d 524, 534 (6th Cir. 2010)).

"Traditional public forums—like parks or sidewalks—have always 'been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'"  *American Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 490 (6th Cir. 2020) (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009)).  Designated public forums are areas that have "not traditionally been regarded as a public

forum' but which the government has 'intentionally opened up for that purpose." *Summum*, 555 U.S. at 469-70. A limited public forum "is limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Id.* at 470; *see also Ison*, 3 F.4th at 893. Nonpublic forums are "not by tradition or designation a forum for public communication," such as a military base or jail. *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1885 (2018).

Although courts have recognized four forum classifications, "[t]here is [still] considerable confusion over whether there are three or four types of free-speech forums." *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 196 n.13 (4th Cir. 2022). Specifically, "[c]ourts have provided conflicting guidance on whether 'limited public forum' is (1) a synonym for or subtype of 'designated public forum'; (2) a synonym for 'nonpublic forum'; or (3) a completely separate fourth category." *Id.* (collecting cases). Moore contends in his motion for summary judgment that there are only three public forums. [Record No. 28, p. 9] And he argues in his reply that, at the time of the first request, Harrodsburg Commissioners' meetings were "a mix between 'designated' and 'limited public' forums." [Record No. 38] Harrodsburg does not take a position regarding the forum category.

Moore relies on *Youkhanna v. City of Sterling Heights*, 934 F.3d 508 (6th Cir. 2019), stating that city meetings are "designated" *and* "limited public" forums. [Record No. 38, p. 8][3] The United States Court of Appeals for the Sixth Circuit used the same language in *Lowery v. Jefferson County Board of Education* regarding a school board meeting. 586 F.3d 427, 432

---

[3]        The decision in *Youkhanna* also appears to have caused confusion in at least one district court. *See Knight v. Montgomery Cnty.*, 592 F. Supp. 3d 651 (M.D. Tenn. 2022) (It is not entirely clear whether the Sixth Circuit here was essentially acknowledging a fifth type—a "designated and limited" public forum, . . . or was merely observing that a city council meeting simultaneously is of two types[.]").

(6th Cir. 2009) ("That is why courts call this sort of forum a 'designated' and 'limited' public forum: 'designated' because the government has 'intentionally open[ed]' it 'for public discourse,' and 'limited' because 'the State is not required to . . . allow persons to engage in every type of speech' in the forum[.]" (citations omitted)).  The distinction is relevant because "[i]n the context of a limited public forum, the government enjoys even more leeway to restrict speech than in traditional or designated public forums[.]"  *Grant v. Slattery*, No. 22-941, 2022 U.S. Dist. LEXIS 177234, at *13 (D.N.J. Sept. 29, 2022).  However, the court in *Youkhanna* applied the limited public forum test to a city council meeting, even though the court labeled it a designated and limited public forum.  934 F.3d at 519-20.    Here, the Court need not determine whether the city meetings were designated or limited public forums because Harrodsburg cannot survive the limited public forum test, notwithstanding its more favorable standard.

### C.  Whether the Government Legitimately Excluded Moore's Speech

Harrodsburg argues that, "assuming . . . [the meeting] was a limited public forum, then this forum was closed for this type of speech – that being, the forum was closed to re-visit the Board's decision . . . . [i]n other words, the time/place/manner had already expired a year prior."  [Record No. 35]  In support, it explains that its employment policy allows an employee to appeal his termination decision within five days.  [*Id.*]

"In a limited public forum, the government can impose reasonable restrictions based on speech content, but it cannot engage in viewpoint discrimination."  *Youkhanna*, 934 F.3d at

519.[4]  It may also "regulate features of speech *unrelated* to its content' through 'time, place, or manner' restrictions."  *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (emphasis added).  Content-based discrimination is a restraint on the substance or subject matter of a particular type of speech.  "Viewpoint discrimination is a subset—and a particularly 'egregious form'— of content discrimination."  *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013) (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).  It happens "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject."  *Rosenberger*, 515 U.S. at 829.  Harrodsburg is incorrect to the extent it argues that its prohibition was based on a time, place, or manner restriction unrelated to content.  Prohibiting an individual from discussing employment or termination is content-based discrimination because it prohibits subject matter, *i.e.*, the subject of work or firing.

Content-based restrictions are permissible in a limited public forum but must be "reasonable in light of the purpose served by the forum and . . . viewpoint neutral."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985); *see also Mama Bears of Forsyth Cnty. v. McCall*, No. 22-CV-142, 2022 U.S. Dist. LEXIS 234538, *22-23 (N.D. Ga. Nov. 16, 2022) ("This prohibition does not fall neatly into the time, place, or manner restriction framework, and therefore can only survive as a content-based restriction if it is reasonable and viewpoint neutral.").  Harrodsburg seems to assert that restricting a former employee's speech regarding his termination is reasonable but fails to argue that Moore's criticism is viewpoint

---

[4]     In a designated public forum, "the government may *not* regulate the 'content' of speech unless it can satisfy strict scrutiny."  *American Freedom Def. Initiative*, 978 F.3d at 491 (emphasis added).

neutral.  [*See* Record No. 35]  Nonetheless, Harrodsburg's actions were neither reasonable content-based restrictions nor viewpoint neutral.

Permissible content-based restrictions require the government to have reasonable *ends* and use reasonable *means*. *American Freedom Def. Initiative v. Suburban Mobility Authority*, 978 F.3d 481, 494 (6th Cir. 2020).  Here, Harrodsburg suggests that it prevented Moore's speech to create an "efficient" public meeting or to limit speech to relevant city business. [Record No. 35, p. 9 n.5]  Restricting speech regarding past employment during a city meeting may be "reasonable in light of the purpose served by the forum," under different circumstances. But speakers in Harrodsburg were not required to discuss city business during the "Welcome Guests" portion.  There were also no guidelines or topic restrictions, and individuals could speak repetitively month after month without a time limit.  The clerk denied no individual— other than Moore—an opportunity to speak.  Assuming *arguendo* that the city desired to restrict speech to pertinent city business or to promote efficiency, it used unreasonable means to achieve that end.  *Cf. Sheck v. Baileyville Sch. Comm.*, 530 F. Supp. 679, 690 (D. Me. 1982) ("Arbitrary official interference with the free flow of information and ideas is unconstitutional."); *Planned Parenthood v. Rose*, 236 F. Supp. 2d 564, 572 (D.S.C. 2002) ("[E]xercise of the right of free speech may not be subjected to the unlimited discretion of public officials[.]").

Additionally, Moore argues that the government's actions constituted viewpoint discrimination.  [Record No. 28]  Harrodsburg does not address this issue in its response.  [*See* Record No. 35.]  Viewpoint-based discrimination occurs "[w]hen the government targets not subject matter, but particular views taken by speakers on a subject[.]"  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).  Employment is a subject matter, but

- 10 -

Moore also alluded to his dissatisfaction towards Harrodsburg Commissioners regarding his termination when he referred to them as "Larry, Curly, and Moe," and allegedly indicated that he "wanted answers" from "the three stooges." [Record No. 28] The clerk was concerned that Moore's speech would be "disruptive" or "confrontational." However, "disfavoring 'ideas that offend' discriminates based on viewpoint, in violation of the First Amendment." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019); *see also Matal v. Tam*, 582 U.S. 218, 243 (2017) ("Giving offense is a viewpoint."). "Freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997); *see also Ison*, 3 F.4th at 895.

## IV.

"The First Amendment offers sweeping protection that allows all manner of speech to enter the marketplace of ideas. This protection applies to loathsome and unpopular speech with the same force as it does to speech that is celebrated and widely accepted." *Bible Believers*, 805 F.3d at 243. Harrodsburg provided speakers with a virtually limitless platform to communicate with commissioners. It impermissibly restricted Moore's viewpoint and content of his speech in violation of the First Amendment to the United States Constitution. Accordingly, it is hereby

**ORDERED** as follows:

1.      Plaintiff Moore's motion for summary judgment [Record No. 28] is **GRANTED**.

2.      The plaintiff is **DIRECTED** to state his position regarding appropriate relief within **thirty (30) days**.  Defendant City of Harrodsburg may file a response and the plaintiff may file a reply in accordance with Local Rule 7.1.

Dated: June 5, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky